**[J-65A-2021 and J-65B-2021]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| ENERGY TRANSFER, | : | No. 24 MAP 2021 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 982 CD |
| | : | 2019 dated October 21, 2020 |
| v. | : | Reversing the Order of the Office of |
| | : | Open Records at No. AP 2019-0502 |
| | : | dated June 26, 2019 |
| ERIC FRIEDMAN, | : | |
| | : | ARGUED:  October 26, 2021 |
| Appellant | : | |
| | | |
| PENNSYLVANIA PUBLIC UTILITY | : | No. 25 MAP 2021 |
| COMMISSION, | : | |
| | : | Appeal from the Order of the |
| Appellee | : | Commonwealth Court at No. 980 CD |
| | : | 2019 dated October 21, 2020 |
| | : | Reversing the Order of the Office of |
| v. | : | Open Records at No. AP 2019-0502 |
| | : | dated June 26, 2019 |
| | : | |
| ERIC FRIEDMAN, | : | ARGUED:  October 26, 2021 |
| | : | |
| Appellant | : | |

**OPINION**

**JUSTICE DONOHUE**                                    **DECIDED:  December 22, 2021**

This appeal by permission in a case of first impression considers whether the

Office or Open Records ("OOR") has the authority to review the denial of an individual's

request for records pursuant to the Right to Know Law, 65 P.S. §§ 67.101–67.3104

("RTKL"),[1] where a public utility has designated records responsive to the request as confidential security information ("CSI") under the Public Utility Confidential Security Information Disclosure Protection Act, 35 P.S. §§ 2141.1–2141.6 ("CSI Act").[2] We hold that the Public Utility Commission ("PUC") has exclusive authority to review such requests and, therefore, the OOR erred in exercising jurisdiction over the CSI-designated records. Accordingly, we affirm the order of the Commonwealth Court reversing the OOR's disclosure order.

Factual Background

Eric Friedman ("Friedman") lives in the area where the Sunoco Pipeline L.P. Mariner East 1 Pipeline ("Pipeline") is located. The Pipeline is a highly volatile liquid ("HVL") pipeline owned and operated by Energy Transfer. On January 31, 2019, Friedman attended a public meeting regarding the Pipeline, at which Paul Metro, the PUC's Manager of Safety Division, Pipeline Safety Section, addressed questions regarding pipeline leaks. In the course of answering questions, Metro mentioned that the PUC possessed hazard assessment reports associated with accidents or releases on HVL pipelines, which included estimates of the blast radius resulting from an accident or release.

The following Monday, Friedman submitted a RTKL request to the PUC for

> all records in the possession of Paul Metro, his superiors or
> subordinates, that relate to the calculation or estimation of the

---

[1] Act of 2008, Feb. 14, P.L. 6, No. 3, effective Jan. 1, 2009.

[2] Act of 2006, Nov. 29, P.L. 1435, No. 156, effective May 29, 2007. The CSI Act defines CSI as "[i]nformation contained within a record maintained by an agency in any form, the disclosure of which would compromise security against sabotage or criminal or terrorist acts and the nondisclosure of which is necessary for the protection of life, safety, public property or public utility facilities[.]" 35 P.S. § 2141.2.

range at which thermal or overpressure events related to accidents on hazardous, highly volatile liquid (HVL) pipelines may be experienced. This request does not seek information provided by Sunoco if that information has been designated as confidential security information. Rather, it seeks records containing or relating to calculations or estimates of blast radius (Sunoco's term) or "buffer zone" (PUC's term) regarding accidents or releases from HVL pipelines in the possession of the PUC, including (but not limited to) information that was produced for PUC by an external source or that was developed internally.

Email Request from Eric Friedman to rchiavetta@pa.gov, 2/4/2019.

The PUC denied Friedman's request, stating that the responsive records had been designated CSI and thus were protected from disclosure by the CSI Act and exempt from disclosure under the RTKL. The PUC informed Friedman that he could challenge the denial of his RTKL request by filing an appeal with the OOR. *See* 65 P.S. § 67.903(5) ("If an agency's response is a denial…, the denial shall be issued in writing and shall include…(5) the procedure to appeal the denial of access under this act."). The PUC did not inform Friedman of its own internal procedures for challenging a public utility's CSI designation.

Having made a RTKL request, Friedman filed an appeal with the OOR, "disputing the confidential nature of the records and the secure nature of the [P]ipeline infrastructure." OOR Decision, 6/26/2019, at 4. The OOR denied his request for disclosure in part. Interpreting the CSI Act from a procedural perspective, the OOR determined that the PUC had failed to prove that the requested records were CSI. It pointed out that, to designate records as CSI, a public utility must comply with the exacting provisions of the CSI Act, which also reside in the PUC's regulations. Specifically, a public utility must clearly state in a transmittal letter to be shared with the requestor that

the records contain CSI and explaining why the information is to be treated as confidential. 52 Pa. Code § 102.3(b)(1). Although the PUC had presented the OOR with two affidavits representing that the responsive records contained CSI, the OOR directed the PUC to provide hard copies of the relevant transmittal letters submitted by Energy Transfer. Because the transmittal letters also contained CSI, the PUC provided the OOR with redacted letters and refused to provide them to Friedman at all. The PUC's refusal to provide Friedman with the letters led the OOR to conclude that there was no evidence in the record proving that the responsive records had been properly designated as CSI. Thus, the OOR ruled that Energy Transfer was not entitled to protection from disclosure under the CSI Act.

Nonetheless, the OOR determined that the PUC had proven, through, inter alia, the affidavits, that certain records were exempt from disclosure under the RTKL. Specifically, the PUC had proven that disclosure of the hazard assessment reports "creates a reasonable likelihood of endangering the safety or the physical security of a…public utility[.]" 65 P.S. § 67.708(b)(3). The OOR further determined that some of the responsive records were exempt from disclosure under a second RTKL exception, i.e., records "of an agency relating to a noncriminal investigation, including (ii) Investigative materials, notes, correspondence and reports[.]" 65 P.S. § 67.708(b)(17)(ii). Finally, the OOR determined that Subsection 335(d) of the Public Utility Code[3] required disclosure of

---

[3] Subsection 335(d) of the Public Utility Code provides, in relevant part, as follows:

> In addition to any other requirements imposed by law, including the [RTKL] and the…Sunshine Act, whenever the commission conducts an investigation of an act or practice of a public utility and makes a decision, enters into a settlement

documents relied on by the PUC in its investigation of the Pipeline, excluding the hazard assessment reports that it found were exempt from disclosure under Section 67.708(b)(3) of the RTKL.

Energy Transfer and the PUC appealed to the Commonwealth Court, which reversed the OOR's decision in a unanimous opinion. *PA. Pub. Util. Comm'n v. Friedman*, 244 A.3d 515 (Pa. Commw. 2020). The Commonwealth Court recounted its statement in *Department of Labor and Industry v. Heltzel*, 90 A.3d 823, 832 (Pa. Commw. 2014) (*en banc*), that "[c]onflicts as to public access, as opposed to public nature, are governed by Section 3101.1 of the RTKL[,]" which provides that, where there is a conflict between the RTKL and another state law, the provisions of the RTKL shall not apply. *Friedman*, 244 A.3d at 519; 65 P.S. § 67.3101.1. As a result, pursuant to Section 2141.3(c) of the CSI Act, the OOR does not administer the CSI Act and lacks any authority to determine whether information qualifies as CSI. *Friedman*, 244 A.3d at 519–20 (citing 35 P.S. § 2141.3). Instead, the court opined, challenges to a CSI designation must be brought to the PUC. *Id.* at 520. The Commonwealth Court observed that Friedman did not exhaust the administrative remedies prescribed in the CSI Act and afforded through PUC regulations. The Commonwealth Court "decline[d] to disrupt the authority of the PUC regarding CSI matters." *Id.*

---

> with a public utility or takes any other official action, as defined in the Sunshine Act, with respect to its investigation, it shall make part of the public record and release publicly any documents relied upon by the commission in reaching its determination, whether prepared by consultants or commission employees, other than documents protected by legal privilege[.]

66 Pa.C.S. § 335(d).

Friedman filed a petition for allowance of appeal, and we granted review of the following issue:

> Does the Office of Open Records have the authority to order the release of a record in Public Utility Commission's possession when the OOR determines that record does not contain Confidential Security Information as defined in the Confidential Security Information Act, 35 P.S. § 2141.3 et seq.?

*Energy Transfer v. Friedman*, 252 A.3d 1083 (Pa. 2021).

<u>Arguments of the Parties</u>

Friedman contends that the OOR had authority to order the disclosure of the records requested under the RTKL. In support, Friedman raises a distinction between disputes regarding the public nature of documents and those regarding public access to documents. He asserts that the OOR has the authority to adjudicate the public nature of documents, while acknowledging that it has less authority with regard to public access to documents. *See Heltzel*, 90 A.3d 823 (explaining that OOR had authority to interpret federal law regarding the nature of records but not to enforce the procedures in that law for accessing public records).

Friedman also asserts that, even though the RTKL and the CSI Act both address access to records, there is no conflict between the two statutes in this case because the appeal procedure of the CSI Act was not triggered, leaving the OOR with unimpeded authority to adjudicate disclosure of the responsive records. He explains that the RTKL's presumption of public access in 65 P.S. § 67.305 is consistent with the public access provision of the Public Utility Code, which requires any documents relied upon by the PUC in reaching a determination about a public utility to be made part of the record. 66 Pa.C.S. § 335(d). In contrast, the CSI Act exempts some information that might otherwise

be subject to disclosure under Subsection 335(d) of the Public Utility Code. However, Friedman insists, the CSI Act affords protection from disclosure only when a public utility follows the procedures set forth in the CSI Act and the corresponding PUC regulations regarding the designation of CSI. *See* 35 P.S. § 2141.3(a) (instructing public utility to "[c]learly state in its transmittal letter, upon submission to an agency, that the record contains [CSI] and explain why the information should be treated as such"); 52 Pa. Code § 102.3(b)(1) (instructing public utility to "[c]learly state in its transmittal letter to the [PUC] that the record contains [CSI] and explain why the information should be treated as confidential").

To Friedman, Energy Transfer's procedural blunder with respect to its transmittal letters was fatal to its designation of the records as CSI and, therefore, to protection under the CSI Act. Because Energy Transfer's transmittal letters did not properly invoke protection under the CSI Act, Friedman reasons, the CSI Act's appeal procedure became irrelevant,[4] and the OOR had authority to adjudicate the public nature of the responsive records. *See* 52 Pa. Code § 102.3(c) (stating that when public utility fails to designate record as containing CSI, "it does not obtain the protections offered in this chapter"). In support, Friedman cites the fact that the CSI Act was enacted two years before the OOR was created and, therefore, does not contemplate the OOR's authority. Friedman also cites *Pennsylvania Public Utility Commission v. Seder/The Times Leader*, 139 A.3d 165, 167 (Pa. 2016), in which, he claims, this Court tacitly approved of the OOR's authority to

---

[4] The Pennsylvania Code embodies the procedure set forth in the CSI Act pursuant to which a member of the public may challenge a designation of CSI first to the PUC and then to the Commonwealth Court or request in writing to examine CSI. 52 Pa. Code § 102.4(a)(1), (2)(i–v).

review and grant disclosure of documents under the Public Utility Code, specifically, the non-criminal investigation provision. Pursuant to 66 Pa.C.S. § 335(d), Friedman contends, the OOR's authority in this case is no greater than its authority recognized in *Seder*.

In response, Energy Transfer and the PUC contend that the OOR's role in reviewing the RTKL request ended when the OOR received good faith affidavits from the PUC stating that disclosure of the responsive documents "would compromise security against sabotage or criminal or terroristic acts regarding pipeline facilities." *See* 35 P.S. § 2141.2 (defining "confidential security information"). They argue that the plain language of the CSI Act vests the PUC with jurisdiction over CSI determinations and, therefore, the Commonwealth Court correctly determined the OOR had no authority to reconsider a designation of records as CSI. In support, Energy Transfer and the PUC emphasize that disputes regarding CSI designation — whether the dispute is about the substantive reasons or the procedural basis for the classification — go to the agency that originally received the record, not to the OOR.[5] Accordingly, as the agency that originally received Energy Transfer's records, the PUC claims it wielded sole authority to adjudicate this matter. Energy Transfer and the PUC further assert that, notwithstanding Energy Transfer's mishandling of its transmittal letters, the PUC had authority to consider both the compliance and substantive aspects of Energy Transfer's CSI designation. *See* 52 Pa. Code § 102.3(d) (explaining that authorized PUC person "will make a preliminary

---

[5] *See* 35 P.S. § 2141.3(c) (providing that "challenges to a public utility's designation or request to examine records containing [CSI] by a member of the public shall be made in writing to the agency in which the record or portions thereof were originally submitted[,]" and authorizing the agency to develop protocol and procedures to address such challenges).

determination whether the information has been properly designated in accordance with the definition of [CSI]").

Next, Energy Transfer and PUC assert that the RTKL defers to other statutes where a conflict regarding access arises. Specifically, the RTKL states that "if the provisions of this act regarding access to records conflict with any other Federal or State law, the provisions of this act shall not apply." 65 P.S. § 67.3101.1. Energy Transfer and PUC find a conflict between Section 2141.3(c) of CSI Act, which authorizes the PUC to oversee challenges to CSI designations, and the RTKL, which purports to give the OOR general authority over access to information. In light of this conflict, they conclude, the provisions of the RTKL do not apply. In fact, they assert, Section 67.3101.1 of the RTKL is consistent with the CSI Act's provision that "[p]ublic utility records or portions thereof which contain [CSI], in accordance with the provisions of this act, shall not be subject to the provisions of" the RTKL. 35 P.S. § 2141.4.

Additionally, Energy Transfer and the PUC challenge the OOR's reliance on Subsection 335(d) of the Public Utility Code as requiring disclosure of some of the responsive records. They contend that Subsection 335(d), which requires the release of documents following PUC decisions, is inapplicable because there was no "decision" or "official action" taken in this case. They refute the notion that the formal complaint and investigation into Energy Transfer pursued by the PUC's Bureau of Investigation and Enforcement constitutes an "official action," as that term is defined in the Sunshine Act.[6] *See* 65 Pa.C.S. § 703 (defining "official action" as recommendations, establishments of

---

[6] Act of 1998, Oct. 15, P.L. 729, No. 93, § 1, effective December 15, 1998; 65 Pa.C.S. §§ 701–716.

policy, "decisions on agency business made by an agency," or a "vote taken by any agency on any motion, proposal, resolution, rule, regulation, ordinance, report or order"). They also point out that Subsection 335(d) of the Public Utility Code contains an exception for information which could be used for criminal or terroristic purposes. *See* 66 Pa.C.S. § 335(d) (providing that "if a document required to be released under this section contains … information which, if disclosed to the public, could be used for criminal or terroristic purposes, the identifying information may be expurgated from the copy of the document made part of the public record"). That exception protects the CSI-designated information challenged in the present matter from disclosure.

Analysis

To recap, Friedman submitted a RTKL request to the PUC for non-CSI records related to the blast radius of an HVL pipeline accident or release. In response, the PUC denied the request, claiming that the responsive records were not subject to public disclosure under the CSI Act and thus were exempt from disclosure under the RTKL. The PUC advised Friedman of his right to appeal the denial to the OOR pursuant to the RTKL but not of his right to appeal pursuant to the PUC's regulations at 52 Pa. Code § 102.3. Friedman filed an appeal with the OOR, challenging the confidential nature of the responsive records.

We must determine whether the OOR had any statutory authority to identify and release to the public records that a public utility has submitted to the PUC with a designation of CSI. As our analysis requires the interpretation of competing statutes, our analysis is governed by the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501-1991.

> Pursuant to the Statutory Construction Act, the overriding
> object of all statutory interpretation "is to ascertain and

> effectuate the intention of the General Assembly" in enacting the statute under review. *Id.* § 1921(a). If statutory language is "clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* § 1921(b). Thus, when the words of a statute have a plain and unambiguous meaning, it is this meaning which is the paramount indicator of legislative intent. However, in situations where the words of a statute "are not explicit," the legislature's intent may be determined by considering any of the factors enumerated in Section 1921(c).

*McKelvey v. Pennsylvania Dep't of Health*, 255 A.3d 385, 397–98 (Pa. 2021). As matters of statutory interpretation involve questions of law, our scope of review is plenary, and our standard of review is de novo. *Philadelphia Gas Works v. Pa. Pub. Util. Comm'n,* 249 A.3d 963, 970 (Pa. 2021).

Neither party argues that the relevant language of the RTKL and the CSI Act is ambiguous, and we find no ambiguity. Thus, our review is based on the plain language of these two statutes,[7] which reveals an overlap in the areas of designating and disclosing a record. Both statutes include procedures for requesting a record in possession of an agency and for challenging the denial of a record request. 65 P.S. §§ 67.702–704, 67.1101; 35 P.S. § 2141.3. They diverge, however, with respect to identifying the nature of, and providing access to, records containing CSI. Before reconciling this divergence as to which forum has statutory authority over CSI, we summarize their unique purposes and provisions.

As "remedial legislation to facilitate government transparency and accountability," the RTKL is "construed to maximize access to public records" in an agency's possession.

---

[7] Because our review is based on the plain and unambiguous language of the RTKL and the CSI Act, we do not have to consider arguments relating to other statutory factors, e.g., policy arguments. *See* 1 Pa.C.S. § 1921(c) (allowing courts to consider statutory factors to discern legislative intent where language of statute is ambiguous).

*McKelvey*, 255 A.3d at 399, 400. *Accord Seder*, 139 A.3d at 174 (observing that "the object of the RTKL is to empower the citizens of this Commonwealth with access to information concerning government activities"). To "prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions," the RTKL places the statutory duty of disclosing public records "solely on the government agency." *McKelvey*, 255 A.3d at 400 (quoting *Pa. Educ. Ass'n v. Commonwealth Dep't Cmty. Econ. Dev.*, 148 A.3d 142, 155 (Pa. 2016)); 65 P.S. § 67.706. To that end, the RTKL mandates a Commonwealth or local agency to "provide public records in accordance with [the] act," and without regard to a requester's "intended use of the public record," unless otherwise provided by law. 65 P.S. §§ 67.301, 67.302.

Pursuant to the RTKL, a record in the possession of a Commonwealth or local agency "shall be presumed to be a public record." 65 P.S. § 67.305. The RTKL defines "public record" as a record of a Commonwealth or local agency that:

> (1) is not exempt under section 708 [of this act, 65 P.S. § 67.708(b) (Exceptions for public records)];
>
> (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or
>
> (3) is not protected by a privilege.

65 P.S. § 67.102.

In furtherance of its transparency goal, the General Assembly created the OOR to enforce the RTKL, giving it specific, enumerated powers. 65 P.S. § 67.1310.[8] In addition

---

[8] The OOR has statutory authority to provide "information relating to the implementation and enforcement" of the RTKL, issue "advisory opinions to agencies and requester," provide "annual training courses [on the act] to agencies, public officials and public

to administrative and training powers, the OOR has the authority to hear appeals from an agency's denial of a request for access to a record, which appeal "shall state the grounds upon which the requester asserts that the record is a public record … and shall address any grounds stated by the agency for delaying or denying the request." 65 P.S. § 67.1101.[9]

As a creation of the RTKL, the OOR reviews record requests and denials of record requests through the lens of the RTKL. In defining "public record" in the RTKL, however, the General Assembly anticipated the OOR's interpretation of other laws. *Cf. Heltzel*, 90 A.3d at 828 (observing RTKL contemplates interpretation of federal Emergency Planning and Community Right-to-Know Act). The RTKL contains two caveats related to how other laws impact its presumption that a record is public and, therefore, subject to public disclosure. These caveats concern the nature of a record and the accessibility of a record, which are distinct concepts. *Id.* at 831 (observing the two concepts are distinct, "otherwise, one of the RTKL provisions would be superfluous, contrary to presumed legislative intent").[10]

---

employees," assign "appeals officers to review appeals of decisions by Commonwealth agencies or local agencies," establish "an information mediation program to resolve disputes" under the act and "an internet website with information" relating to the act, conduct "a biannual review of fees charged" under the act, and report annually "on its activities and findings to the Governor and the General Assembly." 65 P.S. § 67.1310(a)(1)-(9).

[9] An OOR appeals officer has the authority to accept documents, hold a hearing, admit evidence that the officer "believes to be reasonably probative and relevant to an issue in dispute," consult with agency counsel, and render "a final determination on behalf of the [OOR] or other agency" with or without a hearing. *Id.* § 67.1102(a)(1)–(4).

[10] The Reporters Committee for Freedom of the Press and 11 News Organizations (collectively, "Reporters Committee") submitted an amicus brief in support of Friedman,

According to the first caveat, nothing in the RTKL "shall supersede or modify the public or nonpublic nature of a record or document established in Federal or State law, regulation or judicial order or decree." 65 P.S. § 67.306. Thus, where a federal or state law establishes a record as public, the record is not subject to a public record analysis under the RTKL. "Given this significant consequence, a statute should be clear when it establishes the public nature of records." *Heltzel*, 90 A.2d at 832. According to the second caveat, if the provisions of the RTKL "regarding access to records conflict with any other Federal or State law, the provisions of [the RTKL] shall not apply." *Id.* § 67.3101.1. Thus, where a federal or state law prescribes certain procedures to access records in a manner that conflicts with the RTKL, the provisions of the other law prevail.

Whereas the RTKL promotes the disclosure of public records in the possession of an agency, the General Assembly enacted the CSI Act "to create mechanisms for the safeguarding of confidential security information of public utilities that is provided to various state agencies, such as the [PUC], from disclosure that may compromise security against sabotage or criminal or terrorist acts." *Designation of Qualified Documents for Elec. Filing*, L-00070187, 2008 WL 5582647, at *2 (Nov. 19, 2008). To that end, the CSI

---

claiming there is a critical distinction between disputes about the public nature of documents and those about public access to documents. According to the Reporters Committee, although the CSI Act establishes the nonpublic nature of the responsive records, the RTKL empowers the OOR to determine whether records are confidential under the CSI Act. They argue that if this Court finds that the appeals should be directed through the PUC to the Commonwealth Court, requestors will face substantial additional costs, e.g., attorneys' fees, and be deprived of the more efficient and effective system of review by the OOR. In light of the PUC's expertise with regard to public utilities and its CSI-specific regulations, we do not agree that the OOR's system of review is more efficient and effective when it comes to CSI.

Act contains unique procedures for submitting and challenging records designated as CSI. 35 P.S. § 2141.3. The CSI Act defines CSI as follows:

> **"Confidential security information."** Information contained within a record maintained by an agency in any form, the disclosure of which would compromise security against sabotage or criminal or terrorist acts and the nondisclosure of which is necessary for the protection for life, safety, public property or public utility facilities[.]"

*Id.* § 2141.2. A public utility is responsible for determining whether a record in its possession or a portion thereof contains CSI and must identify such records as CSI when submitting them to an agency. *Id.* § 2141.3(a), (b). A public utility "must clearly state in its transmittal letter … that the record contains [CSI] and explain why the information should be treated as such." *Id.* § 2141.3(a).

Whereas the OOR enforces the RTKL, the CSI Act identifies as the administrative body authorized to consider and review a public utility's submission of CSI, "the agency in which the record or portions thereof were originally submitted," and having "protocols and procedures to address [filing CSI-designated records and] challenges to the designations or requests to examine records" containing CSI. 35 Pa.C.S. § 2141.3(b), (c)(1)–(4).[11] As with the RTKL, the CSI Act also addresses the impact of other laws.

---

[11] East Goshen Township submitted an amicus brief in support of Friedman, claiming the CSI Act is not just a PUC statute, as suggested by the Commonwealth Court, because it broadly defines the term "agency." 35 P.S. 2141.2 (defining "agency" as, *inter alia*, any "organization created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential governmental function"). Without explaining how, East Goshen suggests that the OOR may come into original possession of a public utility's CSI and, if so, may be called upon to administer the CSI Act. It urges the Court to read the PUC's misleading communication with Friedman, directing him to the OOR rather than PUC for his challenge, as constructively exhausting the CSI Act remedies and, therefore, entitling Friedman to review in the Commonwealth Court on the merits. In light of our holding in this case, East Goshen Township's argument fails.

Specifically, public utility "records or portions thereof which contain [CSI], in accordance with the provisions of this act, shall not be subject to the provisions of the [RTKL]." 35 P.S. § 2141.4.

Upon review of the purposes and provisions of the RTKL and the CSI Act, we conclude that reconciling the two statutes weighs in favor of the PUC having exclusive jurisdiction with regard to CSI. Evidence of this primacy is found foremost in the plain language of the competing statutes with respect to three topics: the type of information protected from disclosure, the applicability of other laws, and the specific procedures for submitting CSI-designated records and challenging a CSI designation or request for records containing CSI.

Protected Information

By their own terms, both the RTKL and the CSI Act protect certain records from public disclosure, but only the latter was enacted to protect CSI specifically. *Compare* 65 P.S. § 67.708(b) (setting forth thirty enumerated exceptions from disclosure under RTKL) *with* 35 P.S. § 2141.2 (protecting the confidential information of public utilities, "the disclosure of which would compromise security against sabotage or criminal or terrorist acts"). To ensure an agency's proper oversight in light of the greater risks to public safety associated with a public utility's CSI records, the CSI Act imposes criminal penalties on a public official or public employee who knowingly or recklessly discloses "a public utility record or portion thereof" that contains CSI. *Id.* § 2141.6. Because the disclosure of a public utility's CSI-records could present a significant risk to public safety, we conclude that the General Assembly intended to provide a unique vehicle in the CSI Act for protecting CSI from disclosure. To that end, it removed CSI from the domain of the OOR

under the RTKL and placed it squarely in the hands of public utilities and qualified agencies under the CSI Act. In other words, where CSI-designated records are at issue, the General Assembly intended the specific provisions of the CSI Act to prevail over the general provisions of the RTKL.

<u>Relation to Other Laws</u>

The plain language of the two statutes with regard to the impact of other laws also supports the primacy of the PUC over the OOR with regard to the designation of records containing CSI. By its own terms, the RTKL cannot "supersede or modify the public or nonpublic **nature** of a record or document established in Federal or State law, regulation or judicial order or decree." 65 P.S. § 67.306 (emphasis added). And, the RTKL excludes from the definition of "public record" a record that is "exempt from being **disclosed** under any other Federal or State law or regulation or judicial order or decree[.]" 65 P.S. § 67.102 (emphasis added). The CSI Act is a state law that implicitly establishes the nonpublic nature of public utility CSI-designated records by exempting such records from being disclosed. 35 P.S. § 2141.5. As such, a CSI-record is not a public record, as that term is defined in the RTKL, subject to disclosure. Thus, to the extent the RTKL permits greater access to CSI than the CSI Act, a conflict exists between their access provisions. That conflict is resolved by the CSI Act and the RTKL in favor of the CSI Act and its designated agencies. *See* 35 P.S. § 2141.4 ("[p]ublic utility records or portions thereof" that contain CSI are not subject to the provisions of the RTKL); 65 P.S. § 67.3101.1 ("If the provisions of this act regarding access to records conflict with any other Federal or State law, the provisions of this act shall not apply.").

## Procedural Requirements

Lastly, Friedman characterizes the central issue in this case as whether the OOR had the authority to determine if Energy Transfer complied with the CSI Act's procedures for designating records as CSI. In answering this question, we discern no indication in the RTKL that the General Assembly intended for CSI to be disclosed under the RTKL based on a determination by the OOR that a public utility failed to comply with the CSI Act. The General Assembly could have amended the CSI Act to contemplate the OOR's handling of CSI, but it did not.

Because the RTKL's focus is on promoting access to public records, its protocols and procedures relate to submitting and challenging public records in general, not to records affecting public security. 65 P.S. §§ 701–708. In enforcing the RTKL, the OOR is expected to interpret other laws, like the Emergency Planning and Community Right-to-Know Act ("EPCRA") under review in *Heltzel* or the CSI Act in this case, and to make a threshold determination of whether another law applies to a responsive record. Interpreting the CSI Act, the OOR treated Energy Transfer's filing defect as sufficient to render the responsive records "public" in nature and, therefore, subject to disclosure. The OOR's interpretation ignores the lack of any indication in the CSI Act that CSI is public or that its submission provisions were intended to establish the public nature of CSI. *Cf. Heltzel*, 90 A.3d at 832 (explaining that access provision of "EPCRA was not intended to establish the public nature of the records"). It ignores the definition of "public record" in the RTKL as excluding CSI. Most notably, it ignores the plain language of the CSI Act, which sets forth exclusive procedures for submitting CSI and challenging CSI-designations and requests for CSI-records. *See Heltzel*, 90 A.3d at 833 ("Other statutes

that provide other avenues, and set other parameters for access to records … operate independently of the RTKL.").

Unlike the RTKL pro-access provisions, the CSI Act's procedures are designed to prevent public access to CSI-designated records, "the disclosure of which would compromise security against sabotage or criminal or terrorist acts[.]" 35 P.S. § 2141.2. To that end, the CSI Act designates agencies that receive records and have protocol and procedures as having authority to enforce its provisions. The PUC is such an agency. As the administrative body that oversees public utilities in Pennsylvania, the PUC receives records from public utilities and has developed protocols and procedures for the filing of a CSI record, the maintenance of CSI records, and challenges to CSI-designations and requests to examine CSI records. 35 P.S. §§ 2141.2 & .3; 52 Pa. Code §§ 102.3 & .4. Such challenges include claims that a public utility failed to comply with the filing requirements of the CSI Act. In such cases, the PUC has express authority, and the expertise, to determine if a public utility record has been properly designated, both substantively and procedurally, and to afford a public utility with the opportunity to resubmit a record that was improperly, defectively, or not designated as CSI. 52 Pa. Code § 102.3(d)–(f). Thus, determining the consequences of failing to comply with the CSI Act or PUC regulations is also an express function of the PUC, not the OOR.

Based on our interpretation of the RTKL and the CSI Act, we conclude the General Assembly intended for the RTKL to yield to the CSI Act in the dual areas of designating and accessing CSI. In short, a CSI-record is not a "public record" under the RTKL and, therefore, is not subject to disclosure through a RTKL request. We considered *Heltzel* instructive on this point. Therein, the OOR ordered the Department of Labor and Industry

to release its inventory database of hazardous chemicals at all facilities in the state. The OOR based its order on a determination that the information was "public" as a matter of law under the provisions of the federal EPCRA, 42 U.S.C. §§ 11001–11050, prescribing the conditions by which the public could access an inventory of the chemicals on-site at specified designated locations. Having decided that the EPCRA established the public nature of the information, the OOR did not apply exceptions under the RTKL related to safety and physical security, 65 P.S. § 67.708(b), but simply ordered the entire statewide inventory be disclosed. The Commonwealth Court reversed. Although it acknowledged the OOR's authority to interpret other statutes as to the public nature of documents, the Commonwealth Court observed the EPCRA dictated access to the records, not their nature, and opined that the OOR "was not in a position to enforce EPCRA's conditions on public access under the RTKL" if the RTKL would afford greater access to the entire database where the EPCRA limited access to site-specific inspections. *Heltzel*, 90 A.3d at 832-33.

By analogy to the case at hand, the OOR had authority to interpret the CSI Act as to the public nature of Energy Transfer's CSI, but it was not in a position to enforce the CSI Act's procedures for public access to CSI. Although Friedman specifically requested non-CSI records from the PUC through the RTKL, the PUC determined, as it was authorized to do, that Energy Transfer had designated records responsive to Friedman's request as containing CSI. That designation and determination triggered the protections of the CSI Act, including the procedure for challenging a CSI-designation or the denial of a request for records that contain CSI in the PUC. The OOR had only to consider the definition of "public record" in the RTKL to realize that CSI-designated records fall outside

its bailiwick and that it lacked authority to apply the substantive or procedural provisions of the CSI Act or to conclude that records designated by Energy Transfer as CSI and accepted by the PUC as CSI were, in fact, public and accessible.

Although cited by Friedman as authorizing the OOR's review of Energy Transfer's records, the *Seder* case is not instructive. Unlike the case at hand, *Seder* was a straightforward RTKL case. It did not involve a public utility's designation of records as CSI or the interpretation of some other law that established the nature or accessibility of a document. Rather, the record request in *Seder* was made by journalists for documents related to the PUC's informal investigation of an electric utility, including an anonymous employee tip letter alleging violations of the electric utility's "priority-ranking policy when restoring power after [an] October 2011 snowstorm." *Seder*, 139 A.3d at 167. In reviewing the PUC's denial of the record request, the OOR was required to interpret the Public Utility Code's release-of-documents provision, 66 Pa.C.S. § 335(d),[12] under which the PUC sought protection from disclosure of the requested documents. That provision requires the release of "any documents relied upon by the commission in reaching its

---

[12] We described the relationship between Subsection 335(d) and the RTKL in *Seder*:

> By providing that the disclosure mandates of Subsection 335(d) supplement the access to records provided by the RTKL, the General Assembly signaled that transparency is of particular importance in the context of the PUC's governing relationship with public utilities. Governmental transparency is of paramount significance when the PUC enters into settlement agreements with public utilities, as such agreements are negotiated behind doors closed to the public. The disclosure requirements of Subsection 335(d) allow the public to view that which informs the PUC's decisions to enter into settlement agreements with public utilities.

*Seder*, 139 A.3d at 174.

determination" to, inter alia, enter into a settlement agreement with a public utility. 66 Pa.C.S. § 335(d). "The primary dispute [in *Seder* was] what the General Assembly intended when it utilized 'commission' within the context of Subsection 335(d)." *Seder*, 139 A.3d at 171. Concluding that "commission" refers to the entirety of the PUC, not just the PUC's Bureau of Investigation and Enforcement or the PUC commissioners, we held that documents used by the PUC in the course of its investigation and in entering a settlement agreement with the electric utility were to be made part of the public record, subject to the redaction provision in Subsection 335(d) that exempted from disclosure "identifying information contained in the Tip Letter." *Id.* at 174. Given our conclusion in this case that the OOR does not have jurisdiction over CSI-designated records, we need not address its analysis on the issues implicated by our discussion of Subsection 335(d) in *Seder*, i.e., whether the PUC's investigation of Energy Transfer and formal complaint against the utility constituted official action or whether investigation-related records were subject to disclosure, and possibly the security exemption.

The CSI Act expressly provides that challenges to a public utility's designation of CSI or request for CSI records must be presented to the PUC. 35 P.S. § 2141.3(c). Arguably, by informing Friedman only of his right to appeal the denial of his record request to the OOR, and not through its own procedures, the PUC created confusion with regard to the resolution of Friedman's record request. Although less than effective for avoiding the expense of unnecessary litigation, the PUC's direction was not unlawful. The RTKL requires an agency to inform a requestor of his appeal rights, 65 P.S. § 67.903(5). The CSI Act does not require notice of the PUC's appeal procedures.

Based on the foregoing analysis, we hold that the OOR did not have authority to reconsider the nature of Energy Transfer's CSI-designated records or the public accessibility of those records. Upon receipt of CSI-designated records and supporting affidavits, the OOR should have yielded jurisdiction of Friedman's request to the PUC.[13] Accordingly, we affirm the order of the Commonwealth Court reversing the OOR's disclosure order.

Chief Justice Baer and Justices Saylor, Dougherty and Mundy join the opinion.

Justice Wecht files a dissenting opinion in which Justice Todd joins.

---

[13] Our holding here does not foreclose Friedman's ability to challenge Energy Transfer's CSI-designation on procedural or substantive grounds pursuant to the CSI Act and corresponding PUC regulations.